IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL GETCHELL,

      Petitioner,

vs.                                No. 24-cv-1255 JB/SCY

HECTOR RIOS and
ATTORNEY GENERAL for the
STATE of NEW MEXICO,

      Respondents.

## RESPONSE TO DANIEL GETCHELL'S *PRO SE* AMENDED PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254) [Doc. 7]

As their timely filed response to Daniel Getchell's *pro se* amended petition for writ of habeas corpus, [see generally Doc. 7], Respondents, by and through counsel, Jane A. Bernstein, Assistant Attorney General, respectfully submit that the amended petition is "mixed," inasmuch as it includes both exhausted and unexhausted claims. See Moore v. Schoeman, 288 F.3d 1231, 1233 (10th Cir. 2002).

However, undersigned counsel waives the exhaustion requirement, see 28 U.S.C. § 2254(b)(3), and asks this Court to recommend that the amended petition be denied and this matter dismissed with prejudice for Mr. Getchell's failure to identify a state-court merits decision that was (1) contrary to, or involved an unreasonable application of, clearly established federal law; or (2) based upon an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d); see also Brown v. Davenport, 596 U.S. 118, 122 (2022). To the extent that Mr. Getchell raises certain grounds for the first time in this federal habeas petition, they fail under a *de novo* standard of review. Finally, Respondents ask that a certificate of appealability be denied.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On August 13, 2019, a jury found Daniel Getchell guilty of one count each of second-degree criminal sexual contact of a minor (CSCM) (child under 13) (Count 1); and third-degree CSCM (Count 2).  [Doc. 10-1 at 27-28].

Trial testimony revealed that J.G., the elder of Mr. Getchell's daughters, was eight years old in late December 2016 when her mother, LaTeshia Williams, showed J.G. and her younger sister a PowerPoint presentation on "good touch/bad touch."  LaTeshia, who recently had divorced Mr. Getchell, asked whether anybody had ever touched the girls inappropriately.  J.G. initially answered "no," but subsequently told her mother that Mr. Getchell had done so.  [Doc. 11-1 at 209-211, 223].  As J.G. later explained to a jury, around Christmastime 2016, she and her sister were visiting Mr. Getchell at his parents' home, where he was then residing.  She said that one night, while the three of them were lying in bed in the bedroom J.G. believed was hers, Mr. Getchell "touched [her] vagina and then he made [her] touch his penis."  [Id. at 211, 214].  J.G. testified that Mr. Getchell did not penetrate her.  [Id. at 212].

J.G. described her vagina as "[a] part that should not be touched by other people."  [Doc. 11-1 at 212].  She also explained that her vagina was below her belly button, in an area toward the bottom of her pants zipper.  [Id. at 212].  J.G. testified that the bedroom door was closed when the touchings occurred.  [Id. at 215].

J.G. said that before Christmas she loved Mr. Getchell, but since then she began to hate him, as did her mother.  J.G. also stopped spending time with Mr. Getchell, her paternal grandparents, or any members of Mr. Getchell's family.  [Doc. 11-1 at 223-224, 227-228].  After he touched her, J.G. stopped calling Mr. Getchell, "Dad."  [Id. at 208, 232].

Both J.G.'s maternal grandfather, Victor Williams, and LaTeshia testified that J.G. seemed different after the incident. [Doc. 11-1 at 63, 141]. Mr. Williams said that J.G. was "happy-go-lucky" before; after, she became reclusive and did not "want to have anything to do with men, period." [Id. at 63]. LaTeshia said that J.G. was "very talkative" before the incident; after, she became very quiet, which LaTeshia described as "not normal" for her daughter. [Id. at 127]. LaTeshia further testified that J.G. had become very angry at school, "a lot more aggressive" in her karate classes, and "a little bit standoffish[.]" [Id. at 141]. LaTeshia admitted that a nephew who was on probation for sexually touching another girl had spent time with J.G., [see id. at 181], but also confirmed that the Children, Youth and Families Department (CYFD) substantiated J.G.'s allegation against Mr. Getchell. [Id. at 175].

Mr. Williams recalled a time before he learned that Mr. Getchell had touched J.G. when he found the two of them and another granddaughter under blankets on an air mattress. [Doc. 11-1 at 62, 65]. Mr. Williams believed Mr. Getchell "had put himself in a situation," [id. at 62-63], though he did not think Mr. Getchell was "doing anything wrong[]" at the time. [Id. at 65]. LaTeshia testified that she asked Mr. Getchell more than once to stop sleeping in the same bed with their daughters, but he demurred, insisting that the younger girl would become sick in her sleep and cry if he was not there. [Id. at 144-145]. LaTeshia was particularly concerned about the sleeping arrangements because "every morning, [Mr. Getchell] . . . would wake up with an erection." [Id. at 143].

Once the State rested its case, defense counsel, Brendan McDonald, moved for a directed verdict on three grounds. [Doc. 11-1 at 235-236]. First, with citation to State v. Trujillo, 2012-NMCA-092,[1] counsel argued that Count 2 was inappropriately charged as second-, rather than

---

[1] In Trujillo, the New Mexico Court of Appeals held that "second degree CSCM as defined in Section 30–9–13(B) is limited to instances in which a defendant touches or applies force to the

third-, degree CSCM because the accusation was that Mr. Getchell caused J.G. to touch his penis. [Doc. 11-1 at 236-239].  Next, counsel "move[d] for directed verdict in Count 1 because the elements of the crime [did] not include the definition of 'vagina.'" [Id. at 239].  Finally, counsel argued that Count 2 failed because "no evidence was presented as to the definition of penis." [Id.].

After the court, the Honorable Cindy M. Mercer, presiding, denied the motion, [see Doc. 11-1 at 250-252], counsel stated that he would not be presenting any testimony.  [Id. at 252].  The following conversation then took place outside the jury's presence:

| | |
|---|---|
| THE COURT: | All right.  So it's not the defendant's intent to testify today? |
| MR. McDONALD: | That is correct. |
| THE COURT: | All right.  So I will need to address Mr. Getchell on the record.  All right.  So, Mr. Getchell, you have had an opportunity to consider your option to testify at trial if you wish? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | And you understand that that decision is your decision to make. |
| THE DEFENDANT: | Yes. |
| THE COURT: | And you have heard the representation made to the Court by Counsel that you do not wish to make—or do not wish to testify in this case on your own behalf? Have you heard that representation? |
| THE DEFENDANT: | No, I do not wish to testify. |

---

unclothed intimate parts of a minor." State v. Trujillo, 2012-NMCA-092, ¶ 22.  A defendant commits third-degree CSCM if he causes the victim to touch defendant's unclothed intimate parts. Id.

| | |
|---|---|
| THE COURT: | Okay. So you heard your attorney say that, and you agree with that representation? You do not wish to take the stand and testify in this case? |
| THE DEFENDANT: | No, I don't, Your Honor. |
| THE COURT: | And you understand that once you make that determination, that you won't be given another opportunity to change your mind? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | So it's your decision at this time is the decision the Court will proceed with, which is to not have you testify, correct? |
| THE DEFENDANT: | Yes, Your Honor. |

[Id. at 252-253].

The jury found Mr. Getchell guilty as charged. [Doc. 10-1 at 27-28]. He currently is serving an actual term of 14 years' imprisonment in the lawful custody of the New Mexico Corrections Department pursuant to a valid judgment of conviction entered February 4, 2020, in State of New Mexico v. Daniel Getchell, No. D-1314-CR-2018-145. [Id. at 30-33].

Mr. Getchell appealed, arguing, among other things, that (1) the evidence was insufficient to support his convictions, [see Doc. 10-1 at 43-44], because "[t]he case against him turned on whether the jury believed [J.G.][,]" [id. at 65]; and (2) counsel was ineffective for failing to investigate other family members "involved in sexual abuse[]" who had access to J.G. [Id. at 67].

The New Mexico Court of Appeals affirmed, [see Doc. 10-1 at 69-74], and the New Mexico Supreme Court denied Mr. Getchell's subsequently filed petition for writ of certiorari. [Id. at 75-89].

On December 9, 2022, Mr. Getchell deposited for institutional mailing a *pro se* Rule 5-802 NMRA petition for writ of habeas corpus. In it, he asserted that (1) the State withheld exculpatory

evidence, *to wit*, an alleged recently discovered CYFD file; and (2) counsel was ineffective for failing to (a) seek to review that file, (b) allow Mr. Getchell to take the stand, (c) call Mr. Getchell's parents and his sister as witnesses, and (d) investigate the matter adequately by, among other things, interviewing the CYFD investigator and the lead case investigator. [Doc. 10-1 at 106-123].

The state habeas court—again Judge Mercer—appointed the Law Offices of the Public Defender (LOPD) to represent Mr. Getchell. [Doc. 10-1 at 257].

On October 30, 2023, the LOPD amended Mr. Getchell's petition to add that counsel was ineffective for not arguing in closing that the jury "must" acquit on Count 1 due to the State's failure to establish the essential element of "unclothed." [Doc. 10-1 at 302-306].

Judge Mercer conducted two dispositional hearings. During the first, held February 29, 2024, Mr. Getchell withdrew his Brady claim and a number of his ineffective-assistance subclaims. [Doc. 10-1 at 363; Doc. 12-1 at 4, 7, 9, 19]. Following argument by the parties, Judge Mercer dismissed Mr. Getchell's claims that counsel was ineffective for (1) preventing Mr. Getchell from testifying, (2) not calling Mr. Getchell's sister and mother as witnesses, and (3) failing to challenge the sufficiency of the evidence with respect to Count 1. [Doc. 12-1 at 66-69, 72-73]. On March 28, 2024, Judge Mercer reduced her findings to writing. [Doc. 10-1 at 364-366].

Following the second dispositional hearing, which was held August 7, 2024, and involved points not at issue here, [see Doc. 12-1 at 83-119], Judge Mercer, incorporating her March 28, 2024, order, issued a final order dismissing Mr. Getchell's Rule 5-802 petition. [Doc. 10-1 at 401-405]. The New Mexico Supreme Court denied Mr. Getchell's petition for writ of certiorari. [Id. at 406-427].

On December 13, 2024, Mr. Getchell timely filed an initial 28 U.S.C. § 2254 petition, which he subsequently amended. In the amended petition, Mr. Getchell argues that (1) defense

counsel was ineffective for (a) preventing Mr. Getchell from taking the stand and testifying in his own defense based on counsel's belief that a deferred and dismissed judgment and sentence for non-residential burglary could be used to impeach him, (b) failing to move for a directed verdict on Count 1 due to insufficient evidence, (c) not calling Mr. Getchell's mother and sister as witnesses, and (d) failing to move for a directed verdict on Count 2 on the basis of the State's alleged failure to establish that Mr. Getchell caused J.G. to touch his penis "with intent to arouse or gratify sexual desire-an essential element of the offense[]" (Grounds One - Four); (2) Mr. Getchell's constitutional right to due process was violated as a result of "erroneous and misleading" jury instructions (Ground Five); and (3) newly discovered evidence demonstrates that Mr. Getchell is actually innocent (Ground Six).  [Doc. 7 at 6, 8-10, 12, 14, 20-50].

Because Mr. Getchell filed both his original and amended petitions after April 24, 1996, the terms of the Antiterrorism and Effective Death Penalty Act (AEDPA) control.  For purposes of § 2254, Mr. Getchell was in custody at the time he filed the petitions and remains in custody as of the date of the filing of this answer.  Respondents, however, deny all material allegations that Mr. Getchell has suffered a violation of any federal law or federal constitutional provision mandating the granting of federal habeas relief.  See 28 U.S.C. § 2254.  Furthermore, any error that might have been committed in the course of the state-court proceedings must be deemed harmless and without substantial and injurious effect upon the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 622-623 (1993); see also Brown v. Davenport, 596 U.S. 118, 122 (2022) (to secure federal habeas relief petitioner must satisfy both Brecht test "and the one Congress prescribed in AEDPA.").

## II.     THE STATE-COURT RECORD

The following state-court records are attached:

**Thirteenth Judicial District Court, No. D-1314-CR-2018-145**

Exhibit A -     *Grand Jury Indictment*, filed May 17, 2018;

Exhibit B -     Jury Instructions, filed August 13, 2019;

Exhibit C -     Verdict, filed August 13, 2019;

Exhibit D -     Verdict, filed August 13, 2019;

Exhibit E -     *Notice of Appeal*, filed September 11, 2019;

Exhibit F -     *Judgment, Sentence and Partially Suspended Sentence Commitment to NM Corrections Department*, filed February 4, 2020.

**New Mexico Court of Appeals, No, A-1-CA-38798**

Exhibit G -     *Docketing Statement*, filed April 8, 2020;

Exhibit H -     *Notice Proposed Summary Disposition*, filed December 16, 2020;

Exhibit I -     *Memorandum in Opposition and Motion to Amend Docketing Statement*, filed March 1, 2021;

Exhibit J -     *Memorandum Opinion*, filed June 2, 2021.

**New Mexico Supreme Court, No. S-1-SC-38884**

Exhibit K -     *Petition for Writ of Certiorari to the Court of Appeals of the State of New Mexico*, filed July 2, 2021;

Exhibit L -     *Order*, filed October 20, 2021.

**New Mexico Court of Appeals, No, A-1-CA-38798**

Exhibit M -     *Mandate to District Court Clerk*, filed December 22, 2021.

**Thirteenth Judicial District Court, No. D-1314-CR-2018-145**

Exhibit N -     *Petition for Writ of Habeas Corpus*, filed December 21, 2022;

Exhibit O -   *Notice of Rule 5-802(H)(1) NMRA Pre-Appointment Review*, filed February 6, 2023;

Exhibit P -   *Procedural Order on Petition for Writ of Habeas Corpus*, filed February 22, 2023;

Exhibit Q -   *Notice of Non-Intent to File an Amended Petition*, filed May 23, 2023;

Exhibit R -   *Non-Opposed Motion for Order for Release of CYFD Documents and for Order Limiting Use of CYFD Documents Attached to Petition for Writ of Habeas Corpus*, filed July 25, 2023;

Exhibit S -   *Stipulated Order Finding Legitimate Interest in Use of Confidential CYFD Information and Confidentiality Order*, filed August 7, 2023;

Exhibit T -   *Response to Petition for Writ of Habeas Corpus and Motion to Dismiss*, filed September 17, 2023;

Exhibit U -   *Petitioner's Amendment and Further Briefing to Petition for Writ of Habeas Corpus*, filed October 30, 2023;

Exhibit V -   *Response to Petitioner's Amendment and Further Briefing on Petition for Writ of Habeas Corpus and Motion to Dismiss*, filed December 29, 2023;

Exhibit W -   *Order Partially Dismissing Petition for Writ of Habeas Corpus, Ordering Additional Briefing and Scheduling Briefing*, filed March 28, 2024;

Exhibit X -   *Petitioner's Additional Briefing to Petition for Writ of Habeas Corpus, as Ordered at the Preliminary Disposition Hearing*, filed April 29, 2024;

Exhibit Y -   *Response to Additional Briefing and Motion to Dismiss*, filed June 5, 2024;

Exhibit Z -   *Final Order Dismissing Petition for Writ of Habeas Corpus*, filed August 23, 2024.

**New Mexico Supreme Court, No. S-1-SC-40594**

Exhibit AA -  *Petition for Writ of Certiorari to the Second District Court of New Mexico*, filed September 23, 2024;

Exhibit BB -  *Order*, filed November 18, 2024.

**Docket Sheets**

Exhibit CC -  Thirteenth Judicial District Court, No. D-1314-CR-2018-145, downloaded November 21, 2025;

Exhibit DD -    New Mexico Court of Appeals, No. A-1-CA-38798, downloaded November 21, 2025;

Exhibit EE -    New Mexico Supreme Court, No. S-1-SC-38884, downloaded November 21, 2025;

Exhibit FF -    New Mexico Supreme Court, No. S-1-SC-40594, downloaded November 21, 2025.

## III.    ANALYSIS

### A.    Standard of review

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013).  Under the statute's "highly deferential standard of review[,]" a petitioner "must show that the [state court's] decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate[-]court proceeding." Cortez-Lazcano v. Whitten, 81 F.4th 1074, 1082 (10th Cir. 2023) (quoting 28 U.S.C. § 2254(d)) (alterations original to Cortez-Lazcano)).  "Clearly established federal law" refers to United States Supreme Court holdings, as opposed to dicta, existing at the time of the relevant state-court decision.  Williams v. Taylor, 529 U.S. 362, 412 (2000).  A state court need not cite to or even indicate "awareness of [United States Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original).

As the Tenth Circuit has explained,

> [a] state court's decision is contrary to clearly established federal law when it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent. And a state-court decision involves an unreasonable application of clearly established federal law when it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular [petitioner's] case.

Cortez-Lazcano, 81 F.4th at 1082 (internal authorities and quotation marks omitted).

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law[, and] a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Renico v. Lett, 559 U.S. 766, 773 (2010) (emphases in original) (internal authority omitted).  Rather, the state-court decision must "be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see also Woodford v. Visciotti, 537 U.S. 19, 24 (2002).  The dispositive question is "not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet."  Shoop v. Twyford, 596 U.S. 811, 819 (2022) (*quoting* Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  Put differently, "[t]he petitioner must show that a state court's decision is 'so obviously wrong' that no reasonable judge could arrive at the same conclusion given the facts of the prisoner's case."  Frederick v. Quick, 79 F.4th 1090, 1103 (10th Cir. 2023) (*quoting* Shinn v. Kayer, 592 U.S. 111, 118 (2020)).

Federal habeas courts similarly "defer[] to the state court's factual findings unless 'the state court[ ] plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to [the] petitioner's claim.'"  Meek v. Martin, 74 F.4th 1223, 1251 (10th Cir. 2023) (*quoting* Ryder ex rel. Ryder v. Warrior, 810 F.3d 724, 739 (10th Cir. 2016)).  For claims the state courts have not decided on the merits, this Court exercises its independent judgment on review.  See McCracken v. Gibson, 268 F.3d 970, 975 (10th Cir. 2001); see also Pamphille v. Martinez, No. 21-cv-861, 2023 WL 6389001, at *6 (D.N.M. Oct. 2, 2023).  Although no deference is due issues *not* decided on the merits by the state courts, any "state-court findings of fact that bear upon the claim are entitled to a presumption of correctness

rebuttable only by clear and convincing evidence." <u>Grant v. Royal</u>, 886 F.3d 874, 889 (10th Cir. 2018) (internal authorities omitted); <u>accord</u> <u>Sumpter v. Kansas</u>, 61 F.4th 729, 750 (10th Cir. 2023); <u>see also</u> 28 U.S.C. § 2254(e)(1).

The Supreme Court instructs that federal habeas courts "must focus on the last state court decision explaining its resolution of [the petitioner's] federal claims." <u>Church v. Sullivan</u>, 942 F.2d 1501, 1507 (10th Cir. 1991) (<i>citing</i> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-805 (1991)).  In the not-uncommon situation where the state's highest court provides no reasoned analysis for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 584 U.S. 122, 125 (2018).

"[T]he ultimate burden of establishing that the state proceeding violated the Constitution of course remains on the petitioner[,]" <u>Beachum v. Tansy</u>, 903 F.2d 1321, 1325 (10th Cir. 1990), and "deference and reasonableness are [a federal court's] watchwords as [it] review[s]" state-court rulings. <u>Meek</u>, 74 F.4th at 1248.  In other words, scrutiny is highly circumscribed; a federal habeas court "does not sit as a super-state appellate court[,]" <u>Harms v. Cline</u>, 27 F. Supp. 3d 1173, 1178 (D. Kan. 2014); and "review is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Pinholster</u>, 563 U.S. at 180; <u>see also</u> <u>Honie v. Powell</u>, 58 F.4th 1173, 1192 (10th Cir. 2023), <u>cert. denied</u>, 144 S. Ct. 504 (2023) ("AEDPA's tightly turned screws limit [federal] review.").  Application of these standards to the facts of the instant case demonstrates why Mr. Getchell is not entitled to federal habeas relief.

### B.   Because Mr. Getchell has not fully exhausted available state-court remedies, his petition is "mixed."

"A threshold question that must be addressed in every habeas case is that of exhaustion." <u>Harrison v. Champion</u>, 15 F.3d 1538, 1554 (10th Cir. 1994).  Pursuant to § 2254, "[a]n application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not* be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A) (emphasis added).  Indeed, as a matter of comity, a federal court generally will not entertain a habeas petition unless the petitioner has fully exhausted available state remedies with respect to each and every claim raised therein by pursuing the claim(s) through one complete round of established State appellate review.  See, e.g., Moore, 288 F.3d at1232; see also Selsor v. Workman, 644 F.3d 984, 1026 (10th Cir. 2011).

A petitioner exhausts remedies by fairly presenting to the highest state court the substance of his federal claims.  See, e.g., Grant v. Royal, 886 F.3d 874, 890 (10th Cir. 2018); see also Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (identifying as one of two "fundamental tenets of federal review of state convictions[ that] a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court.").  "Fair presentation" does not require a petitioner to cite "book and verse on the federal constitution[,]" Picard v. Connor, 404 U.S. 270, 278 (1971) (internal authorities omitted), but claims must be presented as federal constitutional claims in the state-court proceedings in order be exhausted.  See Duncan v. Henry, 513 U.S. 364, 365-366 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").  It is the petitioner's burden to establish exhaustion, see, e.g., Lackawanna County Dist. Atty. v. Coss, 532 U.S. 394, 404 (2001), which applies equally to claims and sub-claims, see Jernigan v. Jaramillo, 436 Fed. Appx. 852, 855-856 (10th Cir. 2011), and "is not . . . to be overlooked lightly."  Hernandez v. Starbuck, 69 F.3d 1089, 1092 (10th Cir. 1995).  To the contrary, principles of federalism and comity "demand that the requirement be 'strictly enforced.'"  Id. (*quoting* Strickland v. Washington, 466 U.S. 668, 684 (1984)).

In this case, Respondents do not dispute that Mr. Getchell has exhausted available state-court remedies as to Grounds One, Two, and Three by presenting the issues raised therein in his *pro se* state habeas petition, [see Doc. 10-1 at 110-119], the LOPD's amended petition, [see id. at 302-305], and his September 23, 2024, petition for writ of certiorari, [see id. at 406-407, 410, 412-416].  Since Mr. Getchell raises Grounds Four, Five, and Six for the first time in his federal habeas petitions, however, his petition is "mixed."

When confronted with a "mixed" petition, the district court may:

(a)    dismiss the petition in its entirety;

(b)    stay the petition and hold it in abeyance while the petitioner returns to state court to raise any unexhausted claims;

(c)    allow the petitioner to dismiss the unexhausted claims and proceed with those claims for which state-court remedies have been exhausted; or

(d)    ignore the exhaustion requirement altogether and deny the petition for lack of merit.

Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009).

Mr. Getchell's unexhausted claims are meritless and "easily resolvable against" him.  See Rudolph v. Galetka, 2000 WL 293706, at *1 (10th Cir. 2000) (*quoting* Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).  For this reason, Respondents respectfully submit that the most appropriate course of action is to ignore the exhaustion requirement and deny the petition on the merits.  See id. ("[W]here the district court is convinced the unexhausted claim is without merit, or that the issue is easily resolvable against the [petitioner], the court may reach the merits of the claim rather than dismiss the petition.") (discussing § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).

C.       Each of Mr. Getchell's grounds for relief fails on the merits.

1.       Ineffective assistance of counsel (Grounds One - Four)

Mr. Getchell contends that defense counsel was ineffective for (a) "refus[ing]" to allow him to take the stand on the ground that a deferred judgment and sentence could be used against him, (b) failing to move for a directed verdict as to both counts, and (c) not calling Mr. Getchell's mother and sister as defense witnesses.  [Doc. 7 at 5, 7-8].

Strickland v. Washington established a two-part standard for assessing ineffective-assistance-of-counsel claims.  First, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. Second, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  The petitioner must satisfy both prongs, and if he fails on one, this Court need not reach the other.  See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed."); see also Smith v. Robbins, 528 U.S. 259, 285, 286 n.14 (2000) ("The performance component need not be addressed first.").

Courts "always start the [ineffective-assistance] analysis" by presuming that counsel acted objectively reasonably, and that the challenged conduct "*might* have been part of a sound trial strategy." Bullock v. Carver, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis in original).  If the decision in question "was, *in fact,* an adequately informed strategic choice, the presumption that [it] was objectively reasonable becomes 'virtually unchallengeable.'"  Id. (emphasis in original). That Strickland demands "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind[,]" is important because "[a]fter an adverse verdict at trial

even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." Harrington v. Richter, 562 U.S. 86, 109, 110 (2011).  Finally, even an "ill-informed" strategy may be deemed objectively reasonable; an unreasonable "fully-informed strategic choice [is one that] 'was so patently unreasonable that no competent attorney would have made it.'" Id. (quoting Phoenix v. Matesanz, 233 F.3d 77, 82 n.2 (1st Cir. 2000))  For these reasons,

> [s]urmounting Strickland's high bar is never an easy task. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.

Howell v. Trammell, 728 F.3d 1202, 1223 (10th Cir. 2013) (internal quotations and citations omitted).  The "doubly deferential" standard means that this Court gives both the state courts and defense counsel the benefit of the doubt.  See Cortez-Lazcano, 81 F.4th at 1089; see also Martinez v. Quick, 134 F.4th 1046, 1057 (10th Cir. 2025) (calling deference "baked into" both Strickland and the AEDPA).

With reference to the deferred judgment and sentence and the order of dismissal filed March 24, 2011, and July 1, 2015, respectively, in State of New Mexico v. Daniel Getchell, No. D-1314-CR-2009-352,[2] [see Doc. 10-1 at 411; see also Doc. 12-1 at 18-21, 36-37], Mr. Getchell insists that counsel was ineffective because, among other things, "counsel prevented [Mr. Getchell]

---

[2] This Court can take judicial notice of the pleadings in No. D-1314-CR-2009-352, which are accessible here: https://securecourtcaseaccess.nmcourts.gov/CaseDetail.aspx?CaseID=1914335.

from exercising his personal right to testify based on an unfounded fear that the State would impeach him with a prior burglary case that had long been dismissed." [Doc. 7 at 25].

Generally, Rule 11-609 NMRA allows for the use of a prior criminal conviction to attack a witness's character for truthfulness. See Rule 11-609 NMRA. But a prior criminal conviction is not useable for impeachment purposes if it "has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated[.]" Rule 11-609(C)(1) NMRA.

In his state habeas petition, Mr. Getchell directed the court to two cases in support of his argument that his deferred sentence would not have been admissible as impeachment evidence— United States v. Reese, 2014-NMSC-013, and United States v. DeVargas, 579 F. Supp. 3d 1259 (D.N.M. 2022).[3] However, a close reading of both reveals that neither case stands for the proposition for which Mr. Getchell cites them.

Reese involved a deferred state-court sentence for felony tampering that the United States sought to use as the predicate offense in a later proceeding for the purpose of charging James Reese with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Subsection (a)(20) of § 921, however, provides, in pertinent part, that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of" Chapter 44 (Firearms). 18 U.S.C. § 921(a)(20). "[F]ederal law considers the civil rights of convicted felons 'restored' when, under *state law,* they have regained four basic civil rights: (1) the right to vote, (2) the right to hold public office, (3) the right to serve on a jury, and (4) the right to possess firearms." Reese, 2014-NMSC-013, ¶ 11 (emphasis in original) (*citing* United States v. Maines, 20 F.3d 1102, 1104 (10th Cir.1994)).

---

[3] [See Doc. 10-1 at 413].

Because of a conflict between the New Mexico Constitution and the then-effective version of NMSA 1978, § 31-13-1 (2005)[4] as to how a felon's right to hold office in New Mexico is restored, the Tenth Circuit certified this question to the New Mexico Supreme Court:

> If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor, as required by N.M. Stat. Ann. § 31–13–1(E), or is that person's right to hold office automatically restored by Article VII, §§ 1, 2 of the New Mexico Constitution and N.M. Stat. Ann. § 31–13–1(A)(1)?

Reese, 2014-NMSC-013, ¶ 1.

In the course of answering the circuit's question, the New Mexico Supreme Court confirmed that, historically, courts of this State have treated a deferred sentence as an act of judicial clemency, see Reese, 2014-NMSC-013, ¶ 29, and further observed that "satisfying a deferred sentence has functioned as the judicial equivalent of a pardon." Id. ¶ 36. The court then answered the certified question by holding that "upon satisfactory completion of all conditions for a deferred sentence and the resulting dismissal of all charges, New Mexico restores a person's civil rights, including the right to hold public office, by operation of law without the necessity of a pardon or certificate from the governor." Id. ¶ 2. But Reese says nothing about the admissibility of a deferred sentence for impeachment purposes under Rule 11-609. See Benns v. New Mexico Dep't of Pub. Safety, 2022-NMCA-050, ¶ 18 ("In context, Reese did no more than determine the effect of a deferred sentence within the framework of two statutes—a federal statute that specifically defined what constitutes a conviction, and a state statute that tied the restoration of a defendant's civil rights to a sentence imposed.").

DeVargas asked whether a felony offense (aggravated fleeing a law enforcement officer) for which the offender received a suspended sentence in a New Mexico state court could serve as

---

[4] Compare NMSA 1978, 31-13-1 (2005) and NMSA 1978, § 31-13-1 (2023).

a predicate offense under § 922(g). The Court predicted that "the Supreme Court of New Mexico would not apply <u>United States v. Reese</u> to suspended sentences." <u>DeVargas</u>, 579 F. Supp. 3d 1259, 1294 (D.N.M. 2022). DeVargas also says nothing about the admissibility of a deferred sentence for impeachment purposes under Rule 11-609.

Even assuming that defense counsel misjudged the admissibility of Mr. Getchell's deferred sentence, Mr. Getchell cannot demonstrate that counsel performed deficiently by not allowing Mr. Getchell to take the stand in light of it. The reason is that counsel did not prevent Mr. Getchell from taking the stand "based on an unfounded fear" that the State would use the deferred sentence as impeachment evidence; counsel did not prevent Mr. Getchell from taking the stand at all. Instead, the record is clear that during a one-on-one conversation with Judge Mercer, Mr. Getchell himself personally waived his right to testify. [<u>See</u> Doc. 11-1 at 252-253]. Judge Mercer summarized that discussion when she dismissed Mr. Getchell's claim:

> During that colloquy, the court informed [Mr. Getchell] that he would be provided with an opportunity to testify and that the decision as to whether he would testify was his decision to make. The court provided multiple avenues for [Mr. Getchell] to engage in a frank conversation with the court outside of the jury's presence, and inform the court that he disagreed with his counsel's statement, if that was what he wished to do. [Mr. Getchell] repeatedly confirmed that he did not want to testify.

[Doc. 10-1 at 364; <u>see also</u> Doc. 12-1 at 66-68].

Notwithstanding that (1) a criminal defendant has a constitutional right to testify on his own behalf, <u>see</u> <u>Rock v. Arkansas</u>, 483 U.S. 44, 51 (1987), and (2) the defendant possesses "ultimate authority" to make that decision, <u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983), the trial court need not—though Judge Mercer did—explain the right or verify a waiver. Instead, "[t]o ensure his constitutional rights, 'a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand.'"

United States v. Williams, 139 Fed. Appx. 974, 976 (10th Cir. 2005) (unpublished) (*quoting* United States v. Webber, 208 F.3d 545, 550 (6th Cir. 2000)).

Mr. Getchell claims that counsel's representation that Mr. Getchell would not testify "placed [him] in an impossible position[,]" which is why he stood silent before Judge Mercer. [Doc. 7 at 27; see also Doc. 10-1 at 111 ("Mr. Getchell thought that if he disagree[d] with Mr. McDonald, that it would cause tension and conflict between Mr. McDonald and Mr. Getchell.")]. Nevertheless, "'[w]hen a defendant does not alert the trial court of a disagreement [with his counsel regarding his right to testify], waiver of the right to testify may be inferred from the defendant's conduct.'"  Williams, 139 Fed. Appx. at 976 (*quoting* Webber, 208 F.3d at 550); see also Underwood v. Massie, 75 Fed. Appx. 747, 749 (10th Cir. 2003) (unpublished) (no  ineffective assistance of counsel where transcript did not support petitioner's assertion that counsel prevented her from testifying or indicate that petitioner ever objected to counsel's statement that he would not be calling her).  Because Mr. Getchell did not tell Judge Mercer that he disagreed with counsel's pronouncement and, in fact, confirmed that it was his decision not to take the stand, Judge Mercer, having repeatedly questioned Mr. Getchell as to his decision, properly concluded that Mr. Getchell waived his right to testify.

With respect to Mr. Getchell's insistence that a recording from an earlier conversation between him and counsel proved that counsel—not Mr. Getchell—made the decision, [see Doc. 12-1 at 4-5], a claim he repeats here, [see Doc. 7 at 26-27], Judge Mercer explained that "a decision to testify or not to is fluid."  [Doc. 12-1 at 67].  Indeed, the decision often is a last-minute one.  See State v. Santos, No. A-3033-13T1, 2015 WL 9694310, at *5 (N.J. Super. App. Div. Sept. 4, 2015) ("As the judge noted, trials are fluid and a defendant's decision to testify is frequently made at the

last minute."). Further, because Mr. Getchell "clearly waived his right to testify[,]" [id. at 68], there was "no reason to go outside the record[,]" [id. at 67], to consider the earlier conversation.

Mr. Getchell cannot satisfy Strickland's first prong because the record shows plainly—and Judge Mercer expressly found—that Mr. Getchell personally and unambiguously waived his right to testify. Further, as the one who (1) questioned Mr. Getchell about his decision, (2) made sure that Mr. Getchell understood that the decision was his to make; (3) confirmed at least twice that Mr. Getchell had opted not to take the stand; and (4) cautioned Mr. Getchell that his decision was final, [see Doc. 11-1 at 252-253], Judge Mercer was ideally positioned to make the finding as to waiver. See Schriro, 550 U.S. at 476 ("[I]t is worth noting . . . that the judge presiding on postconviction review was ideally situated to make this assessment because she is the same judge who [questioned Mr. Getchell] and discussed these issues with him."). For these reasons, Mr. Getchell is not entitled to federal habeas relief with respect to Ground One.

Mr. Getchell next argues that counsel was ineffective for failing to move for a directed verdict on the basis of what he insists was insufficient evidence. As to Count 1, Mr. Getchell contends that "the State presented no evidence that any touching involved an unclothed body part[.]" [Doc. 7 at 7; see also Doc. 10-1 at 305 ("[T]here was no reasonable trial tactic or benefit of not arguing that [Mr. Getchell] should be acquitted of Count 1 based on the State's failure to establish the element of 'unclothed.'")]. With respect to Count 2, he argues that "the State presented no evidence that any contact was made with intent to arouse or gratify sexual desire— an essential element of" third-degree CSCM. [Id. at 10].

When a habeas petitioner challenges the sufficiency of the evidence underlying his conviction(s), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). This Court considers both direct and circumstantial evidence, <u>see</u> <u>Lucero v. Kerby</u>, 133 F.3d 1299, 1312 (10th Cir. 1998), and assesses sufficiency by "consider[ing] the collective inferences to be drawn from the evidence as a whole[.]" <u>United States v. Hooks</u>, 780 F.2d 1526 (10th Cir. 1986).

In New Mexico, the "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." <u>State v. Smith</u>, 1986-NMCA-089, ¶ 7.

In this case, the jurors were instructed that to find Mr. Getchell guilty of CSCM as charged in Count 1, the State was required to prove beyond a reasonable doubt that (1) on or between September 18, 2016, and December 25, 2016; (2) Mr. Getchell "touched or applied force to the unclothed part of the vulva of J.G.;" who (3) was under the age of 13. [Doc. 10-1 at 12].

Mr. Getchell contends that there was insufficient evidence to prove an unclothed touching because "[t]he State introduced no physical evidence, no forensic findings, and no eyewitness testimony describing such contact." [Doc. 7 at 30]. But the State was not required to introduce physical or forensic evidence because J.G. testified that Mr. Getchell touched her vagina, and her testimony alone was sufficient to support the conviction See, <u>e.g.</u>, <u>State v. Martinez</u>, No. A-1-CA-41571, 2024 WL 3069171, at *1 (N.M. App. Jun. 20, 2024) (collecting cases holding that victim testimony alone was sufficient to support convictions for CSCM and/or CSPM). Further, J.G. responded "No," when asked "did any part of the touch go inside you?" [Doc. 11-1 at 212]. From that, and from J.G.'s additional testimony that (1) the contact scared and angered her, [<u>id.</u> at 217-218]; (2) before the contact she loved Mr. Getchell but after contact she began to hate him, [<u>id.</u> at 223-224]; (3) the incident so disturbed J.G. that she stopped calling Mr. Getchell, "Dad," [<u>id.</u> at 208]; and (4) all interaction between J.G. Mr. Getchell, and Mr. Getchell's family ended after the

contact, [id. at 224-225], a rational jury could have drawn the reasonable conclusion that the contact was under, rather than over, J.G.'s clothing.   Indeed, Judge Mercer expressly found that "[J.G.] testified that [Mr. Getchell] touched her vagina but that his hand did not penetrate her vagina.  A reasonable juror could infer from the testimony that there was skin-on-skin contact." [Doc. 10-1 at 366].  This determination is entitled to deference here.

Regarding Count 2, Mr. Getchell argues that counsel should have challenged the sufficiency of evidence that included no showing that his purpose in making J.G. touch his penis was to arouse or gratify sexual desire.  [Doc. 7 at 10].

For the jury to find Mr. Getchell guilty as charged in Count 2, the State was required to prove beyond a reasonable doubt that (1) on or between September 18, 2016, and December 25, 2016; (2) Mr. Getchell caused J.G. to touch his penis; when (3) J.G. was under the age of 13.  [Doc. 10-1 at 13].

To prove third-degree CSCM, the State must prove that the defendant's act was unlawful, "and it *may* do so by showing that the 'defendant's behavior was done to arouse or gratify sexual desire.'"  State v. Sena, 2008-NMSC-053, ¶ 13 (*quoting* State v. Kerby, 2007–NMSC–014, ¶ 26) (emphasis added).  Additionally, the jury need only be instructed on unlawfulness "if the evidence raises a genuine issue of the unlawfulness of the defendant's actions."  NMRA Crim. UJI 14-925, Use Note 4.  Intent to arouse or gratify sexual desire is not, as Mr. Getchell contends, an essential element of the offense.  Rather, it is a way to establish unlawfulness if unlawfulness is genuinely in question.  See NMRA Crim. UJI 14-132 (explaining under what circumstances the State must prove beyond a reasonable doubt that the perpetrator of a sex offense acted with intent to arouse or gratify sexual desire).

Unlawfulness was not at issue in this case because Mr. Getchell unequivocally denied any contact occurred, insisting instead that the accusations were made up as part of his custody battle with LaTeshia.    [See Doc. 7 at 28 ("Had Mr. Getchell been permitted to testify, the jury would have heard a categorical denial of wrongdoing . . . and evidence of the custody-related motive for fabrication."); see also Doc. 11-1 at 290 ("Mr. Getchell has pled not guilty in this case, and that's where he stands[.]")].  The New Mexico Supreme Court has held that unlawfulness is not at issue where the defendant denies that contact occurred.  See State v. Orosco, 1992-NMSC-006, ¶ 10, see also State v. Johnson, 1996-NMSC-075, ¶ 19 (in context of aggravated assault, explaining that "once a defendant introduces some evidence of lawfulness, the court is under a duty to instruct on the state's burden to prove unlawfulness beyond a reasonable doubt.").  Further, Count 2 charged that Mr. Getchell made J.G. touch his penis.  As in Orosco, here, there was nothing "in the facts to suggest that the touching[], if [it] occurred, might have involved the provision of medical care, custodial care or affection, or any other lawful purpose."  Id.  In fact, it is difficult if not impossible to conceive of any lawful reason a father would cause his 8-year-old daughter to touch his penis. The unlawfulness of Mr. Getchell's conduct, which he denied and continues to deny, was not genuinely at issue and, for that reason, the State was not required to establish an intent to arouse. As a result, Mr. Getchell is entitled to no federal habeas relied with respect to Grounds Two and Four.

Mr. Getchell's final ineffectiveness claim is that counsel was deficient in failing to call Mr. Getchell's mother, Mary Getchell, and his sister, Danial Peck, as witnesses.  He says that Mary Getchell would have testified that she was in the home at the time the contact occurred and "she observed nothing improper or suggestive of sexual contact."  [Doc. 7 at 34].  Danial Peck "would have testified about the ongoing custody battle between" LaTeshia and Mr. Getchell.  She also

would have explained that LaTeshia "expressed animosity toward Mr. Getchell and openly discussed using the accusation to remove him from [J.G.'s] life." [Id.].

As an initial matter, the Tenth Circuit has repeatedly held that whether to call a particular witness is within the sound discretion of trial counsel. See, e.g., Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."); Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998) ("Generally, the decision whether to call a witness rests within the sound discretion of trial counsel."); United States v. Dingle, 546 F.2d 1378, 1385 (10th Cir. 1976) ("It is a matter of discretion on the part of trial counsel to exercise judgment in the determination of witnesses to be called and the testimony to be elicited.").

Judge Mercer found that Mary Getchell's proposed testimony was not so compelling that a different verdict was reasonably probable if only the jury had heard it. [Doc. 10-1 at 364]. To the contrary, Mary Getchell's testimony might have been damaging to the defense inasmuch as she confirmed Mr. Getchell's habit of sleeping in the same bed as his two young daughters. [Id. at 237-238]. That, in combination with LaTeshia's testimony that Mr. Getchell awoke each morning with an erection, could have been very damning in the jury's eyes. Counsel is not ineffective for opting against calling witnesses who might be detrimental to the defense. See Dingle, 546 F.2d at 1385 ("Counsel testified that he did not contact Mrs. Bean because, in his judgment, her testimony would have been detrimental to Dingle's defense."). Further, while Mary Getchell claimed that she was "physically at the home during the entire time the accusations were said to have happened[,]" she also said that she was in the living room. [Doc. 10-1 at 237]. Testimony, however, was that the incident occurred behind a closed bedroom door. [Doc. 11-1 at 214].

Judge Mercer similarly found no reasonable probability that Danial Peck's proposed testimony would have changed the result of the trial. Judge Mercer also commented that most of this proposed testimony was neither admissible nor relevant. [Doc. 10-1 at 365].

"Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." United States v. Shirley, 214 F. Supp. 3d 1124, 1143 (D.N.M. 2016) (internal authority omitted); see also Rule 11-401 NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action."). But Danial Peck's proposed testimony, which would have done little more than paint LaTeshia as aggressive and erratic, [see Doc. 10-1 at 240-241], was unlikely to have established any consequential fact. And because the proposed testimony did not go to LaTeshia's character for truthfulness or untruthfulness, it probably would not have been admissible. See Rules 11-608 and 11-609 NMRA; see also Buffett v. Vargas, 1996-NMSC-012, ¶ 8 ("[T]he trial court has a great deal of discretion in admitting or excluding evidence[.]") (internal authority and quotation marks omitted). In sum, Mr. Getchell has not satisfied his Strickland burden with respect to Ground Three.

## 2. Due Process violations resulting from "erroneous and misleading" jury instructions (Ground Five)

Mr. Getchell next asserts that he was denied due process because "[j]urors were never told that to convict on Count 1 they had to find touching of an *unclothed* body part, nor were they instructed that to convict on Count II they must find *sexual intent*." [Doc. 7 at 44 (emphases added)]. Mr. Getchell raises this argument for the first time in these federal habeas proceedings. Accordingly, this Court exercises its independent judgment when considering it.

Generally, challenges to jury instructions implicate matters of state law that are not cognizable in federal habeas review. See, e.g., Montano v. Shelton, 961 F. Supp. 252, 256 (D. Kan. 1997). Thus, "[u]nless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." Tiger v. Workman, 445 F.3d 1265, 1267 (10th Cir. 2006) (citing Middleton v. McNeil, 541 U.S. 433, 437 (2004)). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" Middleton, 541 U.S. at 437 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)); see also Maes Thomas, 46 F.3d 979, 984 (10th Cir. 1995) (explaining habeas petitioner's "great burden" for securing relief on basis of instructional error).

Under any standard of review, both of Mr. Getchell's arguments fail.

Mr. Getchell's first point must be rejected because the instructions clearly directed that to return a guilty verdict as to Count 1, the jurors were required to find, among other things, that Mr. Getchell "touched or applied force to the unclothed part of the vulva of J.G.[]" [Doc. 10-1 at 12].

Mr. Getchell's second point fails because, as explained above, an intent to arouse or gratify sexual desire is not an essential element of CSCM. Instead, when unlawfulness is genuinely in question, sexual intent is a way to demonstrate said unlawfulness. Here, because unlawfulness was not genuinely in question, there was no need to demonstrate it, and thus no need to establish Mr. Getchell's intent. Ground Five, therefore, lacks merit.

### 3.      Actual innocence (Ground Six)

As his sixth and final ground for relief, Mr. Getchell contends that new evidence in the form of family members' affidavits, statements from those with "firsthand knowledge of the events

surrounding the allegations," and CYFD documentation demonstrates his actual innocence.  He says that "[t]hese materials establish [that] (1) the allegations arose amid an ongoing custody conflict that gave [LaTeshia] a motive to fabricate the claim, and (2) [J.G.'s] statements were inconsistent, recanted at various times, and were influenced by adults seeking to remove Mr. Getchell from [J.G.'s] life."  [Doc. 7 at 46]. He insists that (1) the state habeas court's summary dismissal of this claim was both objectively unreasonable and an unreasonable application of clearly established federal law, and (2) his new evidence satisfies the "gateway standard permitting full review of all his underlying constitutional claims."  [Id. at 48].

A stand-alone claim of actual innocence is not cognizable in a federal habeas proceeding. LaFevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence . . . does not, standing alone, support the granting of the writ of habeas corpus.").  Instead, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup [v. Delo, 513 U.S. 298 (1995)] and House [v. Bell, 547 U.S. 518 (2006)], or [the] expiration of the statute of limitations."  McQuiggin, 569 U.S. at 386.  Importantly, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).  As the Tenth Circuit has stated, "[i]t is essential to recognize that the factual-innocence gateway is an exception to statutory language that provides no such exception. The gateway is a creation of equity."  Pacheco v. Habti, 62 F.4th 1233, 1242 (10th Cir. 2023).

In the actual-innocence context, "new evidence" means not just newly discovered evidence that was unavailable at the time of trial but, instead, "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial.'"  Fontenot v. Crow, 4 F.4th 982, 1031 (10th Cir. 2021) (*quoting*

<u>Schlup</u>, 513 U.S. at 324). Impeachment evidence "is [not] persuasive evidence of 'actual innocence.'" <u>Stafford v. Saffle</u>, 34 F.3d 1557, 1561 (10th Cir. 1994). Similarly, "'[s]imply maintaining one's innocence' and 'casting doubt on witness credibility' do not establish actual innocence." <u>Oxford v. Martenez</u>, No. 19cv172 JCH/CG, 2020 WL 4347270, at *5 (D.N.M. July 29, 2020) (*quoting* <u>Frost v. Pryor</u>, 749 F.3d 1212, 1232 (10th Cir. 2014)).

A court evaluating new evidence does not ignore evidence that actually was presented. Instead, "[i]n assessing the adequacy of a petitioner's showing, the habeas court must consider all the evidence, old and new, incriminating and exculpatory," in a holistic approach that takes account of the impact the entirety of the evidence would likely have had on the jury. <u>See</u> <u>Fontenot</u>, 4 F.4th at 1031-32. Though "a petitioner need not make a case of conclusive exoneration[,]" <u>id.</u> at 1030 (internal quotation omitted), "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" <u>McQuiggin</u>, 569 U.S. at 401 (*quoting* <u>Schlup</u>, 513 U.S. at 316).

Ground Six fails because (1) a freestanding claim of actual innocence is not cognizable in a federal habeas proceeding, (2) this is not a gateway case, and (3) Mr. Getchell does not show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Schlup</u>, 513 U.S. at 327.

To the extent that Mr. Getchell is asking this Court "to treat [his assertion of] actual innocence as a freestanding claim," [<u>see</u> Doc. 7 at 48], such a claim necessarily fails because "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." <u>Herrera v. Collins</u>, 506 U.S. 390, 401 (1993).

This is not a gateway case because aside from partial non-exhaustion, which counsel expressly has waived, this case implicates no procedural or time-related issues. The whole purpose of opening the gateway, however, is to allow a court to consider the merits of barred or otherwise foreclosed constitutional claims. See Fontenot, 4 F.4th at 1030 ("[A] credible showing of actual innocence will allow Mr. Fontenot to overcome both his state court procedural default and his failure to abide by the federal statute of limitations in order to have his *Brady* claim heard on the merits."). But all of Mr. Getchell's constitutional claims are properly before this Court; Respondents have addressed them; and there is no reason the Court will not reach their merits.

Finally, even if Mr. Getchell could proceed with this claim, his "new" evidence falls far short of what would be needed to prevent a reasonable jury from finding him guilty beyond a reasonable doubt. Family members' affidavits and "statements from individuals with firsthand knowledge of the events[,]" assuming their admissibility, would be no more than impeachment evidence. Whatever Mr. Getchell's CYFD documentation might show, evidence before the jury was the agency had substantiated the allegations against him. In short, none of Mr. Getchell's new evidence is so powerfully or compellingly probative of actual innocence that this Court cannot have confidence in the guilty verdicts. See Schlup, 513 U.S. at 316 (actual-innocence evidence must be so strong that reviewing court cannot have confidence in the verdict(s)).

**IV.    CONCLUSION**

On the basis of the foregoing, Respondents respectfully ask this Court to find and recommend that Daniel Getchell's *pro se* amended 28 U.S.C. § 2254 petition is subject to denial and these proceedings to dismissal with prejudice.  Respondents renew their request that a certificate of appealability be denied.

Respectfully submitted,

RAÚL TORREZ
Attorney General

Electronically filed

*Jane A. Bernstein*

Jane A. Bernstein
Assistant Attorney General

Attorneys for Respondents
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2026, I filed the foregoing *Response to Daniel Getchell's Pro Se Amended Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Doc. 7],* with exhibits, electronically through the CM/ECF system.  I further certify that on such date I served the foregoing on the following non-CM/ECF participant in the manner indicated:

Via first-class mail, postage prepaid, and addressed to:

Daniel Getchell, #480289
Otero County Prison Facility
10 McGregor Range Rd.
Chaparral, NM 88081

*Jane A. Bernstein*

Jane A. Bernstein
Assistant Attorney General