FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

FEB 23 2026

MITCHELL R. ELFERS
CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DANIEL R GETCHELL, | |
| Petitioner, | |
| v. | Civil No. 2:24-CV-01255 |
| HECTOR RIOS, WARDEN, ET AL., | |
| Respondent. | |

**PETITIONER'S REPLY TO STATE'S RESPONSE**

Petitioner Daniel Getchell files this reply to the state's response to his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition presents specific, record-based allegations concerning counsel's ineffective assistance. The State's response recasts those claims into different issues that do not resolve the factual and legal questions presented. This reply corrects the state's distraction and properly puts the claims and evidence before the Court.

## ARGUMENT

### I. THE STATE RESPONDED TO A DIFFERENT CLAIM THAN THE ONE RAISED IN THE PETITION

The petition raises a fact-driven claim about what trial counsel did and when he did it. Trial counsel told Mr. Getchell, on the morning of the second day of trial and in front of Mr. Getchell's father, that he would not be allowed to testify unless counsel later decided the defense was "losing." He framed it as his decision alone.

Counsel then went into court and told the judge that Mr. Getchell would not testify. ECF No. 7 at 26–27; ECF No. 7-1 at 27–28.

That is the core of the claim. The petition explains that by the time the court addressed Mr. Getchell, counsel had already made the decision and had already announced it. Mr. Getchell was placed in a position where disagreeing meant contradicting his own lawyer in open court, in the middle of trial, in a case that turned entirely on credibility. The petition explains why, under those circumstances, the later colloquy did not reflect an independent choice by Mr. Getchell, but rather acquiescence to a decision counsel had already taken out of his hands. ECF No. 7-1 at 27–28.

The State does not address that sequence of events. It treats the issue as whether Mr. Getchell knowingly waived his right to testify during the trial court's colloquy. ECF No. 10 at 19–21. Its argument begins and ends with the transcript. Because Mr. Getchell answered the judge's questions and did not announce disagreement with counsel in open court, the State argues the right was waived.[1]

The State's response never deals with the actual claim. The petition relies on evidence that places counsel's advice outside the transcript. Mr. Getchell submitted

---

[1] Indeed, a claim that counsel's bad advice on whether to testify goes to the heart of the knowing and voluntary nature of the decision to testify, which the court transcript does not (and cannot) address. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621 (1977). In other words, the claim is about whether counsel's advice rendered the decision not to testify a valid choice. Pointing to the transcript does not resolve this question.

2

a sworn account describing the second-day courthouse meeting and counsel's statement that he would "only let" Mr. Getchell testify if the defense appeared to be losing. That account is corroborated by Mr. Getchell's father, who was present during that conversation. ECF No. 7 at 26–27; ECF No. 7-1 at 27–28. The petition also relies on a recording of a pretrial discussion in which counsel stated he had "not 100% decided" whether Mr. Getchell would testify, confirming that counsel viewed the decision as his to make. ECF No. 7 at 27.

The State ignores all of that evidence. It does not dispute the father's affidavit. It does not explain why sworn testimony from an eyewitness to the conversation can be disregarded. It does not reconcile the recording with its assertion that the "record is clear" that Mr. Getchell waived his right to testify. ECF No. 10 at 19. Instead, the State simply returns to the colloquy and treats it as dispositive.

The State also reframes the claim as a disagreement over impeachment risk, asserting that the petition rests on an "unfounded fear" that an irrelevant prior conviction could have been used against Mr. Getchell. ECF No. 10 at 19. That is not what the petition alleges. The petition alleges that counsel reserved the decision for himself, conditioned testimony on his own tactical assessment, and acted on that position by telling the court Mr. Getchell would not testify. ECF No. 7 at 26–27; ECF No. 7-1 at 27–28. Whether counsel's stated concern was strong or weak only reinforces the point: counsel made the decision himself in a credibility-driven case

3

where Mr. Getchell's testimony was the only direct rebuttal to the State's accusations.

The State's reliance on waiver-by-silence principles highlights the problem rather than resolving it. The petition does not allege that Mr. Getchell later regretted a voluntary choice or that he quietly sat on a right he was free to exercise. It alleges that trial counsel took control of the decision, told Mr. Getchell he would not be allowed to testify unless counsel later decided otherwise, and then announced that decision to the court before Mr. Getchell was ever questioned. ECF No. 7 at 26–27; ECF No. 7-1 at 27–28. By the time the colloquy occurred, the decision had already been made and publicly attributed to the defense.

That matters because the colloquy did not occur in a vacuum. It occurred after counsel had spoken for Mr. Getchell, in the middle of trial, in a case that turned entirely on credibility. The petition explains that at that point, disagreeing with counsel in open court was not a neutral act. It would have signaled a breakdown in the defense, undermined counsel's authority before the judge, and damaged the defense in front of the jury once trial resumed. ECF No. 7-1 at 27–28. The State's response never confronts that reality of trial practice. It simply assumes that a defendant can freely override his lawyer in open court without consequence, even after counsel has already taken ownership of the decision.

More importantly, focusing on what Mr. Getchell did or did not say during the colloquy puts the spotlight in the wrong place. The question is not whether Mr.

4

Getchell objected loudly enough after counsel acted. The question is whether counsel had the authority to act in the first place. The petition alleges he did not. The right to testify belongs to the accused, not to counsel, and the violation occurs when counsel takes that decision away, not when the accused fails to repair the damage in open court after the fact. ECF No. 7 at 26–27.

The State's position effectively allows counsel to control a personal constitutional right and then insulate that control by speaking first and relying on the defendant's silence in a coercive setting. The petition explains why that approach turns the right to testify into a formality rather than a choice. A transcript can capture what was said in court. It cannot capture who controlled the decision that led to those statements or whether the accused had a realistic opportunity to reclaim that control once counsel had already exercised it. That is the issue the petition raises, and it is the issue the State's response never answers.

In short, the State's response assumes a case where the transcript tells the whole story. The petition presents a case where it does not. This reply brings the Court back to the claim as it was actually raised and supported in the petition.

## II. THE STATE'S RESPONSE AVOIDS THE ACTUAL PROBLEMS RAISED IN THE REMAINING CLAIMS

The same issue that runs through the State's response to the right-to-testify claim appears in its handling of the other grounds for relief. The petition raises specific problems with what the State was required to prove at trial and what trial

5

counsel failed to challenge. The State responds with a high level of generality and never confronts the gaps identified in the record.

On Count One, the petition challenges whether the evidence presented at trial established the statutory element requiring contact with an "unclothed" part of the body, and it challenges trial counsel's failure to hold the State to that burden. ECF No. 7 at 33–35; ECF No. 7-1 at 31–34. The petition does not turn on semantics or the absence of particular phrasing. It turns on whether the trial record contains facts that actually establish the element the State chose to charge.

The petition explains that the trial evidence does not do so. The record does not describe facts from which the jury could determine, without speculation, that the charged "unclothed" element was satisfied. ECF No. 7 at 33–35; ECF No. 7-1 at 31–34. The statute requires proof of a specific form of contact. That requirement is not optional, and it is not satisfied by general assumptions about what might have occurred. The jury was required to find this element based on evidence, not inference untethered to the testimony presented.

The State's response does not identify trial evidence establishing that element. It does not point to testimony describing the condition of clothing at the time of the alleged contact or testimony describing contact that necessarily implies skin-to-skin contact. ECF No. 10 at 22–24. Instead, the State argues that the jury could infer the element from surrounding circumstances. But the response never explains how that inference is grounded in testimony describing the element itself,

as opposed to filling an evidentiary gap with assumption. The statute requires proof, not reconstruction.

This is also an ineffective-assistance claim. Trial counsel did not force the State to confront this gap. Counsel did not focus examination or argument on the State's burden to prove the "unclothed" element as charged. Counsel did not insist on jury instructions that required the jury to find that element explicitly. Counsel did not move for a directed verdict when the State's proof failed to establish it. ECF No. 7 at 33–35; ECF No. 7-1 at 31–34. The State's response does not address those failures. It treats the element as satisfied once the jury accepted the charge generally, but that is not how elements function and not how this offense is defined.

The same pattern appears in the jury-instruction claim. The petition asserts that the instructions failed to require the jury to find essential elements, unclothed contact for Count One and sexual intent for Count Two, and that counsel failed to object or request proper instructions, lowering the State's burden of proof. ECF No. 7 at 36–38; ECF No. 7-1 at 35–37. The State does not analyze the instructions themselves. It does not explain where the jury was told it must find those elements. Instead, it relies on the general idea that juries follow instructions and that the evidence was sufficient. ECF No. 10 at 24–26. That does not answer the claim that the instructions never required the jury to find what the law demands.

7

The State also avoids the substance of the witness-related ineffective assistance claims. The petition asserts that trial counsel refused to interview or evaluate defense witnesses identified by Mr. Getchell and foreclosed their testimony without investigation. ECF No. 7 at 29–31; ECF No. 7-1 at 28–30. The State labels counsel's decisions "strategic" but never addresses whether counsel *investigated* the witnesses at all or knew what their testimony would have been. ECF No. 10 at 21–22. The petition's claim is that counsel shut those witnesses down without looking. The State's response never addresses that claim. *See, e.g., Hinton v. Alabama*, 571 U.S. 263 (2014) (counsel's decision is not "strategic" if it is made without proper investigation).

Finally, the State does not address the causation issue for Count Two. The petition alleges that the State failed to prove the required causal link between the alleged conduct and the charged offense and that counsel failed to challenge that failure. ECF No. 7 at 35–36; ECF No. 7-1 at 34–35. The State's response contains no discussion of causation for Count Two and no explanation of why counsel's failure to raise the issue did not matter. ECF No. 10 at 21–26.

Across these claims, the problem is the same. The petition identifies specific elements the State had to prove and specific failures by trial counsel to make the State do so. The State responds with general statements about sufficiency, strategy, and credibility, without pointing to evidence that fixes the problems identified.

8

Those claims remain unresolved because they were never answered as they were raised.

### III. AN EVIDENTIARY HEARING IS REQUIRED BECAUSE THE STATE COURT RESOLVED DISPUTED FACTS WITHOUT HEARING EVIDENCE

The record shows that Mr. Getchell did not sit on his hands in state court. He put forward evidence to support his claims, identified the factual disputes, and asked the state court to resolve them. The state court did not do so.

On the right-to-testify claim, Mr. Getchell presented sworn evidence describing what trial counsel said and did before the colloquy. He described the second-day courthouse meeting in which counsel told him he would not be allowed to testify unless counsel later decided the defense was "losing." That account was corroborated by Mr. Getchell's father, who was present for the conversation. ECF No. 7 at 26–27; ECF No. 7-1 at 27–28. Mr. Getchell also submitted a recording in which counsel stated he had "not 100% decided" whether Mr. Getchell would be allowed to testify, confirming that counsel viewed the decision as his to make. ECF No. 7 at 27. That evidence squarely created a factual dispute about whether counsel interfered with Mr. Getchell's right to testify.

The state court did not resolve that dispute by hearing evidence. It resolved it by relying on the trial transcript alone and concluding that the colloquy settled the issue. The court did not address the sworn corroboration from Mr. Getchell's father. It did not address the recording. It did not make any credibility findings. It did not

9

hold a hearing. The State's response in this Court takes the same approach. ECF No. 10 at 19–21.

That same problem exists with the other ineffective-assistance claims. Mr. Getchell alleged that trial counsel refused to interview or evaluate defense witnesses and foreclosed their testimony without investigation. ECF No. 7 at 29–31; ECF No. 7-1 at 28–30. Whether counsel investigated those witnesses, what information was available to counsel, and why counsel chose not to present them are factual questions. The state court answered those questions by labeling counsel's conduct "strategic," without hearing from counsel or anyone else. No evidence was taken. No hearing was held.

The element-based claims were handled the same way. Mr. Getchell identified specific elements the State was required to prove and pointed out where the record was silent. ECF No. 7 at 33–38. The state court accepted the convictions without addressing those gaps or allowing any factual development. Again, the State's response follows that same path. ECF No. 10 at 21–26.

This is not a case where the record was undeveloped because Mr. Getchell failed to act. He presented sworn statements, corroboration, and documentary evidence. What is missing is not diligence by the petitioner, but factfinding by the state court. When a court resolves disputed facts without hearing evidence, and when those facts matter to the outcome, an evidentiary hearing is required to decide the claims fairly.

The claims in this case turn on what trial counsel said, what trial counsel decided, what trial counsel investigated, and how those decisions were made. None of that can be resolved by pointing to the trial transcript alone. Because Mr. Getchell developed the record in state court and the state court nevertheless decided factual disputes without a hearing, this Court should hold an evidentiary hearing to resolve those disputes and adjudicate the claims on a complete record.

## CONCLUSION

Mr. Getchell presented specific, evidence-supported claims that trial counsel interfered with his right to testify, failed to investigate and present defense evidence, and allowed convictions without proof of essential elements. The State responded to different issues, ignored critical evidence, and left material factual disputes unresolved. The Court should evaluate the claims as pleaded and order appropriate relief or an evidentiary hearing.

Respectfully submitted,

2/18/26
Date

Daniel R Getchell
Reg. No. 87540
Otero County Prison Facility
10 McGregor Range Rd.
Chaparral, NM 88081

*Pro Se* Movant

## CERTIFICATE OF SERVICE

I certify under the penalty of perjury, pursuant to Title 28 U.S.C. § 1746, that this filing was handed to prison officials for mailing, with affixed, prepaid first-class postage, to the following on the date below.

United States District Court
100 North Church Street
Las Cruces, NM 88001

Office of the Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508

Respectfully submitted,

2/18/26
Date

Daniel Getchell

Daniel R Getchell
Reg. No. 87540
Otero County Prison Facility
10 McGregor Range Rd.
Chaparral, NM 88081

*Pro Se* Movant



Daniel Getchell
McGregor range RD.
Chaparral NM 88081

United States District Court
100 North Church Street
Las Cruces, NM 88001

MITCHELL R. ELFERS
CLERK OF COURT