IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

DANIEL R. GETCHELL
petitioner
V.
HECTOR RIOS, Warden
respondent

NO. 2:24-cv-01255-DHU-SCY

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
SEP 10 2026
ERIK PALTROW
CLERK

MOTION TO AMEND PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Daniel Getchell, pursuant to Rule 15 (C) (A) (B), respectfully moves to amend his petition filed on 12/13/24 and states the following in support:

FACTS AND LAW

Rule 15 (a) (2) states that a party may amend its pleading with the courts leave, which the court should give "freely" "when justice so requires." I'd. However, a court should deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. "Wilkerson v. Shinscki, 606 F.3d 1256, 1267 (10th cir. 2010). Furthermore, Rule 15(c) allows an amendment to "relate back to the date of the original pleading" when the law providing the applicable statute of limitations allows relation back, the amendments claims and defenses arose out of the same transaction or occurrence as articulated in the original pleading. "I'd.[1] Under SCOTUS precedent, so long the original and amended petitions state claims that are tied to a common core of operative facts is consistent with Rule 15(c)(2)'s general application in civil cases, with Habeas Corpus Rule 2(c), and with AEDPA's tight time line for petitions. See Mayle v. Felix, 125 s.ct. 2562, 162 L.Ed. 20, 582, 545 U.S 644 (2005). Further, the state would not be prejudiced by a relation back amendment do to the fact it waived it's exhaustion defense under 28 U.S.C §2254(b)(3). See response to Daniel Getchell's pro se Amended petition For Writ Of Habeas Corpus at 1. Moreover, there is nothing " undue" about his requested amendment. The Bouvier Law Dictionary (2012 Ed.) Defines "undue" as "unusual and improper." It is not "unusual" for a lay person appearing pro se to fail to act, or act contrary to how a qualified legal expert would , under any given situation. See Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th cir. 1996) ("if the plaintiff proceeds pro se, the court should construe [their] pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers"). Petitioners failure to raise claims, and its relevant facts, was not deliberate or an improper move that caused the state some strategic disadvantage.

THE NEW CLAIMS SHARE A COMMON CORE OF OPERATIVE FACTS WITH THE CLAIMS AND FACTS IN THE ORIGINAL AND AMENDED PETITIONS

Rule 10(c) states, in relevant part, that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes" therefore, petitioner's attached documents to his original petition filed on 12/13/24,e.g., his state Habeas, the transcripts of the state Habeas proceedings, supplemental briefs thereto, and appellate record, were, and are, considered a part of the petition for "all purposes." Id. The state did not object to any perceived impropriety of the attachments or request for the court to limit it's use or consideration of said documents. Consequently, the state waived any challenges to the specific use petitioner, now, moves to introduce, infra, e.g., adducing legal and factual claims raised, or attempted to be raised, in the documents attached to the petition (hereinafter referred to as the "petition"). That said, the new claims share a common core of operative facts set forth in the petition, as a matter of law.

## THE NEW CLAIMS PETITIONER RAISES

The new claims he raises are: (1) Ineffective assistance of trial counsel for failing to request a curative instruction on the testimony relevant to CYFD's substantiation of his daughters allegations of sexual abuse; (2) ineffective assistance of trial counsel for failing to object to the testimony that he was indicted on the charges he was on trail for; (3) ineffective assistance of trial counsel for failing to introduce a defense of his daughters prior sexual knowledge;(4) ineffective assistance of appellate counsel for failing to raise unitary conduct on both counts he was convicted of; (5) ineffective assistance of trial counsel for failing to challenge the trial courts sua sponte amendment of the indictment post-verdict; (6) the trial courts actions resulted in an applied acquittal of the CSC-II and, therefore, his conviction on the lesser-included offense of CSC-III violated double jeopardy, and (7) his convictions on both CSC-II and CSC-III violated double jeopardy (unitary conduct) under state law.

## THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

First, petitioner would like to express that, since these are new claims not raised in the state court and

the state expressly waived its exhaustion defense, his new claims were not and need not, be adjudicated on the merits in state court, therefore, the court must review the claims de novo and the deferential standards of §2254(d) do not apply. That said, petitioner proceeds to establish the validity of his claims.

petitioner's ineffectiveness claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Prior pleadings adequately expound on this standard. Petitioner finds it unnecessary to reiterate the same.

THE TESTIMONY ABOUT CYFD SUBSTANTIATING THE SEX ABUSE AND THE INDICTMENT

At trial, trial counsel elicited prejudicial testimony from Ms. Williams that CYFD substantiated his daughters allegations of sexual abuse by him. See vol. II, Tr: 89-90. The state in it's closing argument reiterated this testimony and even stated this "substantiation" truly meant that CYFD found his daughters allegations "to be accurate to be true." See vol. II, Tr: 184-185. Trial counsel was either ineffective for eliciting this prejudicial testimony or, if it can be, fairly, said that the testimony was unpredictable and spontaneous, trial counsel was still ineffective for failing to request the judge for a curative instruction to have the jury disregard the testimony. Likewise, trial counsel was ineffective for failing to object to, and move for a curative instruction on, Ms Williams testimony that he was indicted by a grand jury on the sex charges. See vol. II, Tr-66. The legal premise for these two issues are the same and he explains it below.

A competent attorney would do reasonable investigations into the facts and legalities involved in the charges petitioner faced at trial. More thoroughly, a competent attorney would be familiar with the rules of evidence that govern state criminal trials, in general. A competent attorney would know that Ms. Williams was not a qualified expert in: (1) investigating and substantiating sex abuse allegations by child victims; and (2) diagnosing child victims of sex abuse. Ms. Williams testified as a lay witness and her testimony on the above subjects was specialized knowledge an average person would not have. See

vol. II, Tr: 68; Rule 11-701; state v. Vargas, 2016-NMCA-038 (two step analysis in admitting lay opinion testimony); See also Rule 11-702; Firstenberg v. Monribot, 2015-NMCA-062, cert. denied, 2015-NMCA-006 (the party seeking to admit expert testimony bears the burden of showing that the expert is qualified). Even if, she testified as an expert, this testimony is inadmissible, anyway. See state v. Fairweather, 1993-NMSC-065, 116 N.M. 456, 863 P. 2d 1077 (Admission of child abuse expert opinion on credibility error); Mikeska v. Las Cruces reg'l med. Ctr., 2016-NMCA-068, cert. denied (Admission of expert opinion testimony setting forth a legal conclusion error); state v. Lucero, supra. The fact that the evidence, at trial, revealed that CYFD adjudicated the credibility of the sex abuse under a "substantiated" standard of review was a legal conclusion and that the daughter's trauma related diagnosis was caused by what petitioner allegedly did to her was inadmissible. It would be ludicrous to assume that not even a "qualified" expert could testify to these things; under any circumstances. But, an unqualified lay person, such as Ms. Williams is capable of rendering the same inadmissible testimony. Furthermore, the testimony abut CYFD's and the grand jury's legal conclusions about the guilt of of petitioner is generally inadmissible under rules of relevancy and it's limits. See Rules 11-401-403. The legal rational underlying the inadmissibility of these types of legal conclusions is that it has limited to no probative value, there is significant danger that the evidence would have confused the jury, and it unnecessarily protects the trial with tangential testimony and evidence. See progressive Cas., ins. Co. V. Vigil, 413 P. 3d 850 (N.M. 2018); Blacker v. U-haul Co. of New Mexico; inc., 1992-NMCA-001. In Blacker, the court stated:

The complaint would likely have confused the jury because of the meaning of total disability under our workers compensation law, which focusses on a claimants ability to do his previous job. See NMSA 1978, sec. 52- 1-24 (kepl.Pamp 1991). That definition is much narrower than the basis for the damages plaintiff was alleging at trial in this appeal, which damages were premised not only on

inability to work but also on inability to drive, read, and remember...

applying that legal principal to this case, the fact that his daughter's sex abuse claims were established under a lesser burden of proof would have confused the jury into believing that, since two, authoritative, quasi-judicial bodies found him guilty of the crimes charged, guilt had been established beyond a reasonable doubt. I'd. A competent attorney would not have allowed this testimony to be elicited, go unobjected to, or go uncured. Counsels ineffectiveness caused the jury to convict him under a burden of proof lower than a one that is constitutionally mandated. Strickland prejudice is proven.

## TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE TRIAL COURT'S SUA SPONTE AMENDMENT TO THE INDICTMENT THAT CHARGED AN ENTIRELY NEW OFFENSE

Due process requires that "[e]very accused... Be informed of the crime with which he is charged in sufficient detail to enable him to prepare his defense. State v. Foster, 87 N.M. 155, 157, 530 P.2d 949, 951 (ct. App. 1975). The purpose of a criminal information is to " furnish the accused with such a description of the charge against him as will enable him to make a defense... and to give the court reasonable information as to the nature and character of the crime charged." State v. Myers, 2009-NMSC-061, ¶43, 146 N.M 128, 207 P.3d 1105. Errors in the criminal information, therefore, are not fatal "unless the accused cannot reasonably anticipate from the [indictment] what the nature of the proof against him will be". State v. Marquez, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. Rule 5-204(A) NMRA provides in pertinent part:

The court may at any time prior to a verdict cause the complaint, indictment or information to be amended in respect to any defect, error, omission or repugnancy if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. Thus, to determine whether the district court properly allowed the amendment of a criminal information, a reviewing court must ask (1) whether an additional or different offense was charged, and (2) if any substantial Rights of defendant

were prejudiced. State v. Dietrich, 2009-NMCA-031, ¶64, 145 N.M. 733, 204 P.3d 768. An additional or different offense is charged when the amended information raises "an entirely new offense with elements separate and apart from those in the original criminal information." State v. Roman, 1998-NMCA-132, ¶14, 125 N.M. 688, 964 P.2d 852. In Roman, an attempted murder trial, the state amended the criminal information to include a charge of shooting at an occupied dwelling after the defendant he heard someone shout from inside the mobile home upon which he had opened fire. I'd. ¶41 2-4 the court held the amendment violated Rule 5-204 because the defendant did not have notice of the charge against him, given that shooting at an occupied dwelling was not a lesser included offense of any of the other charges. I'd. ¶14.

In petitioners case, the judge sua sponte amended the indictment post-verdict and at sentencing. By doing so, the judge exceeded its jurisdiction in violation of 5-204 and due process. Under New Mexico law at the time of counsels ineffectiveness, there was no precedent to support that the CSC-II and CSC-III were greater and/or lesser included offenses of one another. In fact, at trial, when at the directed verdict stage, the judge and parties engaged in an in-depth discussion over state v. Trujillo 2012-NMCA-092, 287 P.3d 344 (second degree CSCM as defined in NMSA 1978, section 30-9-13(B) (2003) is limited to instances in which a defendant touches or applies force to the unclothed intimate parts of a minor). Which, made it clear that the relevant CSC-II and CSC-III charges do not share the same elements. See vol II, Tr: 152-166. The trial judge even acknowledged that Trujillo, inter alia, held that there is a distinction between touching a child and causing a minor child to touch oneself. See vol II, Tr: 163-164. Despite this common agreement between counsel and the judge, counsel did not argue that, not only was the CSC-II charge susceptible to a directed verdict, but that an amendment "pre-verdict" would be adding and entirely new charge and would violate due process. Since, the whole defense to the original CSC-II charge was that the act of causing her to touch his penis did not and,

indeed, legally cannot, meet the CSC-II elements. Furthermore, counsel could not have renewed or could have waited to raise the due process issue after the verdict was entered and the judge amended the charge at sentencing. Petitioner was prejudiced by his ineffectiveness because, had he acted effectively, it would have resulted in him not being convicted of CSC-III.

PETITIONER'S CONVICTION ON THE CSC-III VIOLATED DOUBLE JEOPARDY DUE TOTHE FACT THAT THE JUDGE'S ACTS IN REGARD TO THE CSCII RESULTED IN AN APPLIED ACQUITTAL

Trial counsel was also ineffective for raising alternative grounds to the due process issue, supra by arguing that if the judge was to find that amending the CSC-II to CSC-III did not charge a new offense (which, would mean the CSC-III is a lesser-included offense of the CSC-II), it would mean that it would necessarily resolve the due process issue but such a conclusion would, in turn, present a double jeopardy issue, infra.

The cases relevant to his double jeopardy issue that is the predicate claim to his IAC claim is state v. Lizzol, 2007-NMSC-024, 141 N.M. 705 (N.M 2007), United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.E.d. 2d 642 (1977), Burks v. United States, 437 U.S.1, 98 S.Ct. 2141, 57 L.Ed. 2d 1 (1978), United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed. 2d 608 (1970), Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed. 2d 43 (1978) and United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed. 2d 65 (1978). After harmonizing these cases, supra, the United States Supreme Court clearly established the following: (1) the state is barred from appealing when a defendant is acquitted by the trial court no matter how egregiously erroneous the trial courts ruling; (2) whether a defendant was acquitted does not depend on the trial court's characterization of it's ruling; (3) an acquittal results when, after making an erroneous evidentiary ruling, the trial court concludes that the evidence is insufficient to proceed; (4) an acquittal does not result when, notwithstanding the defendants possible culpability, the trial court determined the defendants prosecution is constitutionally

or statutorily prohibited; (5) a defendant may not be retried after the conviction is set aside because of insufficient evidence; and (6) a defendant maybe retried if the conviction was set aside because of trial error.

Petitioner contends that (2) and (3) applies to his case and his CSC-III conviction violates double jeopardy. At trial, at the directed verdict stage, in response to trial counsels argument that there was insufficient evidence to sustain a conviction under the CSC-II, the trial judge agreed with trial counsel that Trujillo applied and the CSC-II needed to be "modified" to a CSC-III. However, the judge also, erroneously, ruled that there was sufficient evidence to sustain a conviction on the CSC-II regardless, of what the judge verbalized or reduced to writing, what is dispositive is what the judge actually did. An acquittal is "a resolution in the defendants favor, correct or not, of some or all of the factual elements of the offense charged." Scott, 437 U.S at 97, 98 S.Ct. 2187. It is obvious that the judge acted in accordance with Trujillo's holding that the act of causing a victim to touch oneself's intimate parties is insufficient to meet the elements of CSC-II. This was a factual resolution by the trial judge. This amounted to an acquittal on the CSC-II and any greater or lesser-included offenses of this charge. Ergo, the CSC-III conviction violated double jeopardy. Competent counsel would have raised the due process and double jeopardy issues in tandem. At the time the judge effectuated the amendment, competent counsel would have known that raising these two claims, at the same time, would force the state and court to, either, conclude there is no due process issue because the CSC-III is a lesser-included offense of CSC-II and subject itself to the double jeopardy violation or conclude that the CSC-III is not a lesser-included offense of the CSC-II to defeat the double jeopardy issue and, as a result, subject itself to the due process issue. Had counsel acted effectively, he would not have been convicted of CSC-III. Therefore, Strickland prejudice is shown. Petitioner also presents the due process claim as a stand alone state law violation and the double jeopardy claim as stand alone state and federal law violations.

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE A DEFENSE THAT ESTABLISHED THE PROSECUTRIX'S PRIOR SEXUAL KNOWLEDGE

Prior to trial and at trial, council was aware that there was uncontroverted evidence that Ms. Williams side of the family included various sex abuse victims and that his daughter, not only was aware of this, but that she received in-depth conversations with these female victims of sex abuse. The facts of his case prove that she gained prior sexual knowledge from these stories of sex abuse by her female family members. The facts show that she was "schooled" on the details of sex abuse prior to the same sexual abuse allegations made against him. Notably, trial counsel acknowledged these facts to argue that the police investigators failed to investigate whether the perpetrators of the sexual abuse against those women could have possibly been the one(s) to have sexually abused his daughter. His opening statement and closing argument on this subject was baseless and unsupported by any evidence brought out at trial. Trial counsel failed to produce evidence and facts to support this theory and that was not reasonable. What would have been reasonable is trial counsel relying on the facts, supra, supporting a defense that would negate the jury's natural tendency to believe in a young child's sexual naivete. The law, at the time of his trial, established any jury's natural tendency to believe this. Even in the face of a situation where the prosecutor does not interject evidence that a victims source of sexual knowledge came from the sexual allegations. This general legal principal was set forth in State v. Payton, 2007-NMCA-110, 142 N.M. 385 (N.M. App 2007), which hold, in relevant part:

At some point, the dynamic requiring a defendant to be able to show an alternate source of sexual knowledge loses force as the child becomes older. See Budis, 593 A. 2d at 791 (noting that evidence of prior sexual experience is less probative in cases involving older children). For example, it may have doubtful application one a child turns twelve or thirteen. See 2 Myers, supra, §1213(" in cases involving adolescents, such evidence may be excluded"). We offer no opinion if a child is ten or eleven and note that expert testimony about the level of knowledge of a ten-or eleven-year-old child might be

warranted. But if a child is younger than ten, and especially at earlier stages, the assumption that the child will have no sexual knowledge gains force, and the need to counter it with evidence that the child has an alternate source of knowledge becomes stronger. In this case, Gabrielle was eight, one or two months shy of her ninth birthday, when she first made the allegations in July 2001. She was sufficiently young to raise the assumption that she was sexually naive and could not have known about digital penetration unless defendant engaged in that act with her.

I'd. ¶13. This was essential to the holding in Payton, therefore, this legal principal, applicable to petitioners case, was precedential and authoritative. See e.g., Black's law dictionary 454 (6th ed. 1990) defining "dicta" as "language not essential to determination of the case in hand." Any competent attorney would have known about this universal assumption of sexual naivete with children. Counsels ineffectiveness caused his daughter's (the key witness and only direct evidence to all the charges) assumption of sexual naivete to go, completely, unrebutted. This failure allowed her credibility to be enhanced on the "material" allegations and left it unchallenged. Strickland prejudice is shown.

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE DOUBLE JEOPARDY ISSUE VIS-A-VIS UNITARY CONDUCT UNDERLYING THE CSC-II AND CSC-III

In New Mexico, a double jeopardy violation analysis under the state and federal constitution is the same. See state v. Ramirez, A-1-CA-42197 (N.M. App. May 26, 2026). "When determining whether a defendant's conduct was unitary, a court considers whether the defendant's acts are separated by sufficient indicia of distinctness." State v. DeGraff, 2006-NMSC-011, ¶27. A reviewing court considers six factors to decide whether specific criminal acts are sufficiently distinct so as not to be unitary. See Herron v. State, 1991-NMSC-012, ¶15. These factors are (1) temporal proximity of the acts, (2) location of the victim or victims during each act, (3) existence of any intervening events, (4) sequencing of acts, (5) the defendant's intent as evidenced by their conduct and utterances and (6) the number of victims. I'd. The Herron factors apply to cases of duplicity and multiplicity. See state v.

Phillips, 2024-NMSC-009, ¶13, 38, 548 P.3d 51 ( stating that the unitary conduct analysis in double description cases and in unit of prosecution cases are substantiality similar and applying Herron factors in a double description case). These factors are guidelines and no factor is individually dispositive. Id, ¶ 13. Other considerations include the elements of the charged offenses and whether the force used to commit one crime is the same as the force used to commit the another crime. See state v. Sandoval, 2025-NMCA-002, ¶34, 561 P.3d 1102. " Irrespective of which of the Herron factors or other considerations is deemed controlling in a given case, our case law makes clear that if it reasonably can be said that the conduct was unitary, then [a reviewing court] must conclude that the conduct was unitary".

In petitioner's case, it is simple and uncomplicated. His daughter testified that " my dad touched my vagina and then he made me touch his penis." See vol II, Tr: 126. The evidence of contact for both CSCs were simultaneous and occurred at the same time, without any intervening event. The location was the same, and so was the intent and force. They presented no other material facts to negate unitary conduct. See Sandoval, 2025-NMCA-002, ¶37; State v. Mora, 2003-NMCA-072, ¶ 3, 18, 133 N.M. 746, 69 P. 3d 256 ( concluding there was unitary conduct when the defendants acts of laying on top of the victim and then "humping" her took place in a short time frame and in the same space). The facts of his case undeniably prove that there was a non frivolous double jeopardy issue that appellate counsel failed to raise. See Milton v. Miller, 744 F. 3d 660 (10th cir. 2014). Had appellate counsel raised it, his CSC-III charge would have been vacated. Strickland prejudice is shown. Petitioner also presents his double jeopardy issue as stand alone claims under state and federal law.

PETITIONER INVOKES THE CUMULATIVE ERROR ANALYSIS PURSUANT TO CASTRO V. WARD, 138 F. 3d 810 ( 10th cir. 1998 ).

Since §2254 (d) does not apply, petitioner is entitled to an evidentiary hearing on his claims.

As stated earlier in this motion, petitioner is entitled to de novo review and the strictures of § 2254 (d)

do not apply. The state waived any challenges to an evidentiary hearing on all his ineffectiveness claims to adduce his trial and appellate attorneys actual strategies, legal theories and perceptions at all times relevant to the ineffectiveness claims Strickland. These facts are essential to rebutting the rebuttable presumption of reasonable trial/appellate strategy in accordance with Burt v. Titlow, 571 U.S. 12, 22 (2013) ( evidences needed to rebut presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment").

WHEREFORE,

Petitioner prays the court will grant his omnibus motion and amended petition, review it, grant it and any other remedy deemed just and proper.

Daniel Getchell

Daniel R. Getchell

9-9-2026

Date:

CERTIFICATE OF SERVICE

I certify under penalty of perjury, pursuant to 28 U.S.C § 1746, that this filing was handed to prison officials for mailing, with affixed, prepaid first-class postage, to the following on the date below.

U.S. District Court Clerk
333 Lomas Blvd NW #270,
Albuquerque, NM 87102

NM Attorney Generals Office

P.O. Box 1508

Santa Fe

New Mexico

87504-1508

Daniel Getchell 9-9-2026

Daniel Getchell Date: